## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURIE LOCKLIN BUTT, | : | CIVIL NO.: 1:24-cv-02148 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

In this social security action, Plaintiff Laurie Locklin Butt seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act.  We have jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1* to 12-7.[2]  In March 2022, Butt protectively filed[3] an application for disability insurance benefits. *See Admin. Tr.* at 182–86.  She contends that she has been disabled since March 1, 2022. *Id*. at 185.  After the Commissioner denied her claim at the initial level and at the reconsideration level of administrative review, Butt requested an administrative hearing. *Id.* at 84–88, 90–95.  In January 2024, Butt as well as a vocational expert testified at a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). *Id*. at 40–67.  In February 2024, the ALJ denied Butt's claim for benefits. *Id*. at 7–32.  Butt appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id*. at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Butt's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

In December 2024, Butt, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1*. She requests that the court find that she is entitled to benefits, remand the case to the Commissioner for further proceedings, or grant such relief as is justified. *Id*. at 2 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 9*. The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 11, 12*. The parties filed briefs, *see docs. 15, 17, 18*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—

3

and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Butt is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Butt met the insured-status requirements through March 31, 2026. *Admin. Tr.* at 10, 12.

ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On February 2, 2024, the ALJ denied Butt's claim for benefits. *Admin. Tr.* at 7–32. He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Butt had not engaged in substantial gainful activity since her alleged onset date of March 1, 2022. *Id.* at 12.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Butt had the following severe impairments: generalized osteoarthritis; basal joint arthritis and degenerative changes of the carpometacarpal joints of the thumbs; degenerative disc disease of the lumbar spine and cervical spine; inflammatory arthritis; seronegative rheumatoid arthritis; myofascial pain dysfunction syndrome; and fibromyalgia. *Id.*[5]  The ALJ also found that Butt's insomnia, generalized anxiety disorder, and major depressive disorder were not severe impairments. *Id.* at 13.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Butt did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at

---

[5] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

15–18.  Specifically, the ALJ considered Listing 1.15 with respect to Butt's

degenerative disc disease of both the lumbar and cervical spine, Listing 1.16 with

respect to Butt's degenerative disc disease of the lumbar spine, Listing 1.18 with

respect to Butt's basal joint arthritis and degenerative changes of the

carpometacarpal joints of the thumbs, and Listing 14.11 regarding Butt's

inflammatory arthritis and seronegative rheumatoid arthritis. *Id*. at 15–17.  He also

concluded that Butt's generalized osteoarthritis does meet or medically equal any

listing under Section 1.00 of the listings regarding musculoskeletal impairments.

*Id*. at 17.  And noting that there is no specific listing regarding myofascial pain

dysfunction syndrome or fibromyalgia, he concluded that the evidence does not

indicate that Butt's myofascial pain dysfunction syndrome or her fibromyalgia in

combination with her other impairments meets or medically equals any listing. *Id*.

at 17–18.

## D.  The RFC.

The ALJ then determined that Butt had the RFC to perform light work[6] with

some limitations. *Id*. at 18.  He concluded that Butt can lift and/or carry 20 pounds

---

[6] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have

occasionally and 10 pounds frequently; she can sit, stand, and walk six hours in an eight-hour day; and "[s]he is limited to occasional posturals and occasional handling and fingering with the bilateral upper extremities." *Id*.

In making this RFC assessment, the ALJ considered Butt's testimony and assertions regarding her limitations. *Id*. at 18–19.  The ALJ concluded that although Butt's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 19.  The ALJ also considered Butt's medical records and the treatment she received. *Id*. at 19–20.  And he concluded that the medical records indicate that Butt's "treatment is effective in limiting [her] symptoms related to her severe physical impairments," and she "does not experience symptoms related to her severe physical impairment to the extent" she alleges. *Id*.

The ALJ further considered the medical opinions in the record. *Id*. at 20–23.  Specifically, he considered the opinion of Nurse Practitioner Karena Hammon, and

---

the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

after setting forth a summary of her opinion, he concluded that her opinion was supported by her clinical examination findings, but "not consistent with all of [Butt]'s medical records pertaining to this matter, including abnormal diagnostic testing findings pertaining to [Butt]'s cervical spine and lumbar spine." *Id*. at 21. Thus, the ALJ found Ms. Hammon's opinion persuasive only "to the extent it indicates [Butt] is capable of performing a range of work at the light exertional level." *Id*.

And, importantly to the claim in this case, the ALJ considered the opinions of Certified Registered Nurse Practitioner Leah Simoncini, who was one of Butt's treatment providers. *Id*. at 22–23. On February 15, 2023, Ms. Simoncini completed a Physical Residual Functional Capacity Questionnaire regarding Butt, and on March 9, 2023, she submitted a letter stating that Butt "is incapable of performing more than part-time work," and "[h]er work must also be sedentary." *Admin. Tr.* at 667–671, 673–74.

The ALJ addressed Ms. Simoncini's Physical Residual Functional Capacity Questionnaire, and he found her opinions within that document unpersuasive:

> Leah Simoncini, CRNP, completed an opinion on February 15, 2023 that indicates [Butt] constantly experiences pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; [Butt] is incapable of even low stress jobs; sit for one hour at one time and sit about two hours in an eight hour work day; stand for one hour at one time and stand/walk for about two hours during an eight hour work day; [Butt] requires periods of walking around

11

for ten minutes every sixty minutes; requires a job[] that permits shifting at will from sitting, standing, or walking; requires unscheduled breaks three to four times for two to four hours; occasionally lift and carry up to ten pounds; rarely lift and carry twenty pounds; never lift and carry fifty pounds; and [Butt] would be absent from work more than four days a month. In support of the opinion, Ms. Simoncini referenced diagnoses of fibromyalgia, myofascial pain dysfunction syndrome, seronegative rheumatoid arthritis, and inflammatory polyarthropathy and [Butt]'s symptoms of chronic pain, weakness, and fatigue. However, Ms. Simoncini's opinion is not consistent with [Butt]'s medical records on a longitudinal basis, including clinical examination findings of normal range of motion of the wrists, ankles, feet, ankles, shoulders, and cervical back, a supple neck, no joint fullness or tenderness of the hands, shoulders, knees, or feet, normal range of motion of the wrists, shoulders, knees, ankles, and feet, grossly intact sensation, motor function, and coordination of the upper extremities, good range of motion of joints of the thumbs, a normal gait, a normal posture, a supple neck, full strength of the shoulders, biceps, and triceps, full finger opposition, middle finger extension, pinch maneuver, and thumb extension, intact fine motor skills, full dorsiflexion, plantar flexion, inversion, eversion, quadriceps, hamstring strength bilaterally, no neurological deficits, a steady gait, good static balance, good dynamic balance, a negative neural tension test, and 2+ reflexes of the biceps, triceps, quadriceps, and Achilles. Accordingly, the undersigned does not find Ms. Simoncini's opinion persuasive.

*Id*. at 22–23.

Setting forth the exact same recitation of Butt's medical records as above, the ALJ similarly found Ms. Simoncini's March 9, 2023 opinion unpersuasive. *Id.* at 23. And setting forth the exact same recitation of Butt's medical records as

12

above, he found persuasive the opinions of two state agency medical consultants, whose opinions substantially aligned with his RFC assessment. *Id*. at 21–22.

The ALJ also considered a statement submitted by the medical director of the veterinary clinic where Butt works a few hours a week,[7] but setting forth the exact same recitation of Butt's medical records as above, he concluded that the statement was not consistent with Butt's medical records on a longitudinal basis. *Id*. at 23.  The ALJ further considered statements submitted by Butt's father, her friend, and the hospital manager at the veterinary clinic where Butt works a few hours a week. *Id*. at 23–25.  And setting forth the exact same recitation of Butt's medical records as above as well as adding that there is a "lack of any ongoing abnormal clinical examination findings pertaining to memory or concentration," he concluded that those statements were not consistent with Butt's medical records on a longitudinal basis. *Id*. at 23–25.

The ALJ then summarized the reasons for his RFC assessment:

As discussed above, [Butt]'s allegations regarding her symptoms and limitations are not consistent with all of the evidence of record.  However, the undersigned has accommodated some degree of [Butt]'s symptoms related to her severe impairments in her residual functional capacity by limiting the claimant to a range of work at the light exertional level that includes postural and manipulative limitations.

*Id*. at 25.

---

[7] *See Admin. Tr.* at 44 (testimony of Butt that she currently works less than five hours a week).

## E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Butt was unable to do her past relevant work as a personnel clerk, veterinary technician, and receptionist. *Id*. at 25.

## F.  Step Five.

At step five of the sequential-evaluation process, considering Butt's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as usher, furniture-rental clerk, and bailiff—that exist in significant numbers in the national economy that Butt could perform. *Id*. at 25–26.

In sum, the ALJ concluded that Butt "has not be under a disability, as defined in the Social Security Act, from March 1, 2022, through the date of this decision." *Id*. at 26 (bold omitted).  Thus, he denied Butt's claim for benefits. *Id*. at 27.

## V.  Discussion.

Butt claims that the ALJ's RFC assessment is not supported by substantial evidence because he failed to properly evaluate the opinions of Ms. Simoncini. More specifically, she contends that the ALJ's failure to properly evaluate the opinions of Ms. Simoncine precludes meaningful judicial review.  Because Butt's

claim involves the ALJ's RFC assessment and opinion testimony, before addressing the merits of Butt's claim, we set forth general standards regarding the RFC assessment and the evaluation of opinion testimony.

### A.  The RFC.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's]

residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

### B. Opinion Testimony.

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to,

explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022).  On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The consistency factor

17

focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at \*10.

### C.  The ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not adequately articulate his reasons for finding the opinions of Ms. Simoncini unpersuasive.

Butt contends that the ALJ failed to adequately address either the supportability or consistency factors regarding Ms. Simoncini's opinions. Although Butt has several severe medically determinable impairments, her arguments focus on the ALJ's explanation regarding Ms. Simoncini's opinions in the context of her fibromyalgia, which the ALJ found was one of Butt's severe medically determinable impairments.  As to supportability, Butt argues that although the ALJ set forth in one sentence that Ms. Simoncini refers to her diagnoses in support of her opinions, the ALJ does not conclude whether he found that Ms. Simoncini's opinions were supported, and he failed to discuss Ms. Simoncini's treatment notes.  And, she asserts, with fibromyalgia it is common for physical exams to appear normal and reliance on subjective complaints is necessary.  As to the consistency factor, Butt asserts that although fibromyalgia does not show itself through objective means and normal exam findings are not significant, the ALJ failed to acknowledge such, and he failed to explain how his list of normal exam findings was inconsistent with Ms. Simoncini's opinions.

18

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. Ruling 12-2p, *Titles II & XVI: Evaluation of Fibromyalgia*, 2012 WL 3104869 at *2 (S.S.A. July 25, 2012) ("SSR 12-2p"). Symptoms of fibromyalgia "include severe fatigue, sleep problems, and problems with memory or thinking clearly." *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025). "[T]he symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869 at *6. And "unlike some other pain-causing disorders, fibromyalgia results in few physical manifestations." *Swiecichowski,* 133 F.4th at 758. "Significantly, normal examination findings are of little relevance in reviewing a claim based on pain and fatigue from fibromyalgia." *Watkins v. Colvin*, No. 3:16-CV-367, 2016 WL 4679015, at *10 (M.D. Pa. Sept. 7, 2016). Thus, overemphasis on the lack of objective evidence is not appropriate. *See Andree S. v. Commission of Social Security,* No. 25-CV-10592, 2026 WL 516159, at *3 (E.D. Mich. Jan. 27, 2026) ("In fibromyalgia cases, objective evidence is often unavailing, and overemphasis on it is inappropriate."), *report and recommendation adopted*, 2026 WL 513133, at *1 (E.D. Mich. Feb. 24, 2026); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) (citing cases and joining "[a] growing number of circuits [that] have recognized fibromyalgia's unique nature and have accordingly

held that ALJs may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based on a lack of objective evidence substantiating them"). Because the symptoms are generally subjective, fibromyalgia is "notoriously difficult to access[.]" *Swiecichowski,* 133 F.4th at 757.

Here, the ALJ found Ms. Simoncini's opinions unpersuasive because they were not—in the ALJ's opinion—consistent with Butt's "medical records on a longitudinal basis." *Admin. Tr.* at 22. The ALJ then cited a list of basically normal examination findings. *Id.* at 22–23. But the ALJ did not explain how those findings were inconsistent with Ms. Simoncini's opinions to the extent her opinions were based on Butt's fibromyalgia.

We agree with the Commissioner that the ALJ's decision must be read as a whole, he need not use particular language, and he may weave his discussion of the supportability and consistency factors throughout his discussion of the opinion evidence. *See Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (concluding that to satisfy the requirement of articulating how she analyzed the supportability and consistency factors, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor[,]" and the ALJ adequately articulated her decision where she "weave[d] supportability and consistency throughout her analysis of which doctors were persuasive"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (reading the ALJ's decision as whole and

20

concluding that the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis").  But here, reading the decision as a whole does not show that the ALJ's treatment of Ms. Simoncini's opinions complied with his duty to articulate why he found her opinions unpersuasive.  As discussed above, the ALJ's discussion of Ms. Simoncini's opinions focuses on the normal examination findings without explaining how—considering Butt's fibromyalgia—those findings are inconsistent with Ms. Simoncini's opinions. Zooming out from the ALJ's discussion of Ms. Simoncini's opinions to his discussion overall, we observe that the ALJ's focus remained on the normal examination findings.  The ALJ focused on those same findings when considering the opinions of the state agency medical consultants and when considering the statements of the medical director and hospital manager of Butt's part-time employer as well as her father and her friend, all without explaining how the largely normal findings relate to Butt's fibromyalgia.  Given this, reading the ALJ's decision as whole does not suffice to show that he sufficiently articulated his reasoning as to the consistency of Ms. Simoncini's opinions.[8]

---

[8] As to the supportability factor, Butt asserts that the ALJ failed to state whether he actually found Ms. Simoncini's opinions supported by her records and explanation.  The Commissioner suggests that the ALJ found that Ms. Simoncini's opinions were supported by her explanation. *See doc. 17* at 2, 11.  Regardless of whether the ALJ's discussion of the supportability factor was inadequate, for the reasons discussed herein, his discussion of the consistency factor was inadequate

21

We also agree with the Commissioner that the ALJ did not err simply because he referenced normal examination findings. SSR 12-2p provides that the RFC assessment must be based "on all relevant evidence in the case record" and the "longitudinal record[.]" SSR 12-2p, 2012 WL 3104869 at *6. And although "fibromyalgia results in few physical manifestations[,]" "[t]his does not mean . . . that clinical evidence is irrelevant in fibromyalgia cases." *Swiecichowski,* 133 F.4th at 758. "Once the claimant has established that her fibromyalgia is a medically determinable impairment, the ALJ still needs to resolve whether the severity of the resulting symptoms limits the claimant's ability to work; this is the heart of the RFC analysis." *Id.* "And physical examinations can help answer this question by revealing the claimant's ability to walk, move, and generally function." *Id.* Further, the ALJ found that Butt had multiple severe impairments, and normal examination findings are relevant to his assessment of those impairments as well as her fibromyalgia. *See Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220 (3d Cir. 2008) ("In addition to his diagnosis of fibromyalgia, Dr. Schibli found that Trauterman suffered from cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome. In light of these diagnoses, it was quite appropriate for the ALJ to consider the objective medical evidence of record."). Thus, we do not fault the ALJ for citing normal examination findings. Rather, we

---

and requires remand. Thus, we need not focus on the ALJ's supportability discussion—or lack thereof.

22

conclude that the ALJ did not meet his burden to articulate his reasoning sufficient to allow meaningful judicial review of his analysis of Ms. Simoncini's opinions given that he merely sets forth a list of normal examination findings without addressing how, given Butt's fibromyalgia, they support his conclusion that Ms. Simoncini's opinions are not persuasive.

Of course, an ALJ need not accept the testimony of a claimant regarding the limiting effects of fibromyalgia, and he or she may find medical opinions regarding the limiting effects of a claimant's fibromyalgia unpersuasive. But the ALJ is required to sufficiently explain his or her reasons for doing. And here, given the ALJ's focus on the mainly normal examination findings without any discussion of the evidence in the context of fibromyalgia, we conclude that the ALJ failed to adequately articulate his reasoning in finding Ms. Simoncini's opinions unpersuasive. This frustrates meaningful judicial review and precludes us from concluding that the ALJ's RFC assessment is supported by substantial evidence.

The ALJ's articulation error regarding Ms. Simoncini's opinions is not harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)). "An error is

23

'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Here, Ms. Simoncini opined that Butt had numerous limitations, including that she lacks the attention and concentration to perform even simple work tasks, she is incapable of even low stress jobs, she requires unscheduled breaks three to four times a day, and she would be absent from work more than four days a month. *Admin. Tr.* at 667–71. Butt would almost certainly have been found disabled had the ALJ accepted the limitations set forth in Ms. Simoncini's opinions. Thus, we cannot say the ALJ's error here is harmless.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

24